## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARQUENT A. WHETZEL,

      Plaintiff,

    vs.

THE CITY OF NEW CASTLE, et al.

      Defendants.

No.    2:23-cv-1595-CCW

**ELECTRONICALLY FILED**

**THE CITY OF NEW CASTLE; OFFICE ANTHONY MANGINO, JR.; AND OFFICER JOSHUA COVERT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

AND NOW, come Defendants, The City of New Castle; Office Anthony Mangino, Jr.; and Officer Joshua Covert, by and through counsel, and file the following Brief in Support of Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

### I. Statement of the Case

This action arises from an alleged "assault that occurred between September 5, 2021, and September 6, 2021, that involved Officers of NCPD [New Castle Police department] and Correction Officers employed through LCCC [Lawrence County Corrections Center]." (ECF 1, Compl., ¶12) Plaintiff avers that "[o]n September 5, 2021, Officer Mark Lewis, was dispatched to 719 Oak Street, New Castle, Pennsylvania for an alleged domestic dispute." (ECF 1, Compl., ¶13) "The Plaintiff allegedly left the scene prior to Officer Lewis arriving." (ECF 1, Compl., ¶14)

Plaintiff alleges that, thereafter, "Defendant Mangino, a New Castle Police Officer received a dispatch around 11:45 p.m. and executed a traffic stop of a silver Jeep" in which Plaintiff was riding as a passenger. (ECF 1, Compl., ¶¶15-16) Plaintiff alleges that Officer Mangino then placed Plaintiff into custody and that "Plaintiff and Defendant Mangino engaged in a verbal altercation to which Defendant Mangino took offense." (ECF 1, Compl., ¶¶16- 17) According to the Complaint,

"[w]hile the Plaintiff was in custody, Defendant Mangino struck him multiple times in the face without physical provocation." (ECF 1, Compl., ¶18)

Plaintiff claims he "was then transported to LCCC." (ECF 1, Compl., ¶19-20) Plaintiff claims that he was then removed from the patrol car, had a spit mask placed over his head and that the "Police Officers and Corrections Officers then transported the Plaintiff inside of the jail to begin a search his person." (ECF 1, Compl., ¶¶23-24) Thereafter, Corrections Officer Pitzer allegedly "became frustrated with the Plaintiff because he was arguing with Defendant Mangino." (ECF 1, Compl., ¶25) Plaintiff alleges that "Defendant Pitzer then grabbed the Plaintiff from behind and placed him in a choke hold" and then "slammed the Plaintiff to the ground intentionally dropping all of this weight onto the Plaintiff's back." (ECF 1, Compl., ¶¶28, 30) Plaintiff further claims that "Defendant Brader pepper sprayed" him while he was unconscious. (ECF 1, Compl., ¶32) After Plaintiff awakened in a chair, he claims that Defendant Brader and an unknown Corrections Officer "slammed the Plaintiff back onto the ground" and that Pitzer "placed his foot on the Plaintiff's neck." (ECF 1, Compl., ¶¶36-39) Plaintiff claims that three Corrections Officers "then forcibly lifted the Plaintiff from the ground and began forcibly escorting him to an adjacent room in the back." (ECF 1, Compl., ¶40) Plaintiff claims that "[w]hile he was being transported the Defendant Correction Officers stated, 'we don't have no [expletive] rules, we are the police.'" (ECF 1, Compl., ¶41)

Plaintiff alleges that "[a]s this was occurring, Defendants' Mangino and Covert were laughing and giggling uncontrollably." (ECF 1, Compl., ¶42) According to Plaintiff, when "Defendant Correction Officers reached the back room, they rammed the Plaintiff's head into a steel door and threw him onto the floor." (ECF 1, Compl., ¶44) Plaintiff avers that "Brader then

exited the room and approached Officer Mangino and Covert and the parties did a military salute acknowledging that the behavior was endorsed by the [them]." (ECF 1, Compl., ¶45)

As a result of these alleged events, Plaintiff claims that he "has experienced psychological trauma and excruciating pain throughout his body…" (ECF 1, Compl., ¶46) According to the Complaint, "Mangino, Pitzer, Brader and John Doe utilized excessive force in, but not limited to, punching, choking, slamming, and pepper spraying the Plaintiff." (ECF 1, Compl., ¶65)

Plaintiff avers "that the Plaintiff initial interactions with Defendant Mangino whereby he was disrespectful and referencing Defendant Mangino's family members caused Defendant Mangino to retaliate against the Plaintiff by striking him in the face multiple times." (ECF 1, Compl., ¶74) Plaintiff also avers that "the statements made by Plaintiff toward Defendant Mangino, caused Defendant Covert to retaliate by failing to intervene." (ECF 1, Compl., ¶76)

Plaintiff also claims that "The City of New Castle is liable for the violations of Plaintiff's Fourth Amendment rights because it executed a policy and/or custom and/or practice and/or failed to adequately train and supervise Defendants Mangino and Covert that inflicted the injuries herein." (ECF 1, Compl., ¶91) According to Plaintiff, "The City of New Castle failed to adequately supervise and train Defendants Mangino and Covert in the proper use of force, which resulted in the excessive force displayed against Plaintiff." (ECF 1, Compl., ¶94)

As a result of the events alleged in the Complaint, Plaintiff asserts the following causes of action: Count I – Violation of 42 U.S.C. §1983 - Excessive Force - Mangino and Correctional Officers; Count II – Violation of 42 U.S.C. §1983 – First Amendment Retaliation – All Officers; Count III – Violation of 42 U.S.C. §1983 – Conspiracy – All Officers; Count IV – Violation of 42 U.S.C. §1983 – City of New Castle; Count V – Violation of 42 U.S.C. Section 1983 – Lawrence County Correctional Facility; Count VI – Common Law Assault and Battery – Mangino and

Correctional Officers; and Count VII – Intentional Infliction of Emotional Distress – All Officers. (ECF 1, Compl., Counts I to VII)

## II.  Rule 12 Standard for Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Franklin v. City of Pittsburgh*, No. 2:22-cv-1310, 2023 WL 4744835, at *2 (W.D. Pa. July 25, 2023). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Twombly*, 550 U.S. at 555. That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). Merely alleging that a municipality has "engaged in a policy, custom, and practice" that violated plaintiff's federal rights is precisely the formulaic recitation of legal elements that the Supreme Court has determined is insufficient in defeating a motion to dismiss. *Lord v. Erie County*, No. 08-cv-213, 2010 WL 56095, at *3 (W.D. Pa. Jan. 5, 2010), *aff'd*, 476 Fed. App'x. 962 (3d Cir. 2012).

## **III. Discussion**

A.  **The Court should dismiss the First Amendment Retaliation claim against Officer Covert because a retaliation claim cannot be based upon alleged omissions or the failure to act.**

Plaintiff's First Amendment Retaliation against Officer Covert is based upon the allegation that "the statements made by Plaintiff toward Defendant Mangino, caused Defendant Covert to

retaliate by failing to intervene." (ECF 1, Compl., ¶76) The Third Circuit has held that, to establish a First Amendment retaliation claim predicated on 42 U.S.C. §1983, "a plaintiff must prove the following elements: (1) constitutionally protected conduct; (2) that the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the two." *Ferris v. Borough of Baldwin*, 247 F. Supp. 3d 671, 676 (W.D. Pa. 2017), *citing Walker v. Clearfield County District Attorney*, 413 Fed. App'x. 481, 483 (3d Cir. 2011). Plaintiff's First Amendment Retaliation claim against Officer Covert fails as a matter of law because Plaintiff cannot satisfy the second element, "adverse action." Rather, Plaintiff attempts to base the claim upon an omission, the alleged failure to intervene, which cannot support a First Amendment Retaliation claim.

Magistrate Judge Lanzillo of this Court has observed that "the U.S. Court of Appeals for the Third Circuit has never recognized Section 1983 liability predicated on a 'failure to intervene' theory, other than in the context of excessive force claims." *Gabriel Rosa-Diaz v. Oberlander*, No. 1:22-CV-239, 2023 WL 6795805, at *6 (W.D. Pa. Oct. 13, 2023). **Importantly**, "a failure to act on a complaint is not a retaliatory or adverse action sufficient to sustain a First Amendment retaliation claim." *L.H. v. Pittston Area School District*, 130 F. Supp. 3d 918, 934 (M.D. Pa. 2015), *aff'd*, 666 Fed. App'x. 213 (3d Cir. 2016), *citing Monn v. Gettysburg Area School Dist*., 2013 WL 1345501, at *4–5 (M.D. Pa. Apr. 2, 2013) *aff'd*, 553 Fed. App'x. 120 (3d Cir. 2014), *cert. denied*, 574 U.S. 974 (2014). An alleged failure to act "is generally not a retaliatory action because, in the typical retaliation claim, the plaintiff is complaining about 'an affirmative detriment following the exercise of protected activity.'" *L.H.*, 130 F. Supp. 3d at 934.

Here, Plaintiff's First Amendment Retaliation claim against Officer Covert is premised solely upon the allegation that "the statements made by Plaintiff toward Defendant Mangino,

caused Defendant Covert to retaliate **by failing to intervene**." (ECF 1, Compl., ¶76) (Emphasis added.) This retaliation claim against Officer Covert fails as a matter of law because Plaintiff cannot satisfy the second element, "adverse action," since Plaintiff bases the claim entirely upon an omission, the alleged failure to intervene, which cannot support a First Amendment Retaliation claim. To assert a plausible retaliation claim against Officer Covert, Plaintiff must allege facts to support the conclusion "that the defendant took adverse action." Because an alleged failure to act is "not a retaliatory action," this Court should dismiss Count II as to Officer Covert.

### B.  The Court should dismiss Count IV against the City of New Castle because Plaintiff has not pled a plausible *Monell* liability claim.

A municipal entity cannot be held liable under 42 U.S.C. §1983 under a theory of *respondeat superior* for its employees' constitutional torts. *Richardson v. Barbour*, No. 2:18-CV-01758-JMG, 2020 WL 4815829, at *3 (E.D. Pa. Aug. 19, 2020). "It is a serious thing to hold a municipality liable for the actions of its employees, and that is why the legal standard for municipal liability under 42 U.S.C. §1983 is a challenging…one for plaintiffs to overcome." *Wetzel v. Dietterick*, No. 4:21-cv-1004, 2022 WL 4387877, at *1 (M.D. Pa. Sept. 22, 2022). That standard cannot be satisfied by asserting conclusory allegations, or by failing to plead key facts connecting the municipality itself to the unconstitutional conduct. *Id*.

Claims for §1983 liability against a municipality are governed by the Supreme Court decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *Armstrong v. Unknown Officers*, No. 20-cv-160, 2020 WL 1233567, at *2 (E.D. Pa. Mar. 12, 2020). To establish *Monell* liability, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694. A policy is established when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). In contrast,

a custom can be established by showing that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)

There are "rigorous standards of culpability and causation" necessary to incur municipal liability. *Wood v. Williams*, No. 13-3908, 568 Fed. App'x. 100, 104 (3d Cir. 2014). Thus, it is appropriate to dismiss a case based on municipal liability where the complaint makes only conclusory and general claims of failure to screen, train or supervise employees to avoid constitutional violations. *Id*. "'[S]imply paraphras[ing] §1983' does not meet Rule 8's pleading requirements because it fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Wood*, 568 Fed. App'x. at 104 (Citations omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff alleging municipal liability under §1983 must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009)

A municipality's failure to train, supervise or discipline its police force may be "properly thought of as a city 'policy or custom' that is actionable under §1983" only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Armstrong*, 2020 WL 1233567, at *3, *quoting City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). In the Third Circuit, a plaintiff sufficiently pleads deliberate indifference for failure to train, supervise or discipline "by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Armstrong*, 2020 WL 1233567, at *3, *quoting Estate of Roman v. City of Newark*, 914 F.3d 789, 798, n.7 (3d Cir. 2019)

Importantly, District Courts sitting in Pennsylvania have repeatedly held that the type of conclusory allegations in Plaintiff's Complaint are insufficient to state a *Monell* claim. For example, the United States District Court for the Eastern District of Pennsylvania granted the City of Chester's motion to dismiss where the *Monell* claims against the City for "its alleged failure to train, supervise, and discipline" its police officers were "merely formulaic recitations of the elements of a *Monell* claim, unsupported by any factual allegations." *Armstrong*, 2020 WL 1233567, at *3. That civil rights case arose from an alleged encounter between the plaintiff and multiple Chester Police Department officers that occurred when the plaintiff visited a friend's apartment to use the bathroom. *Id*., 2020 WL 1233567, at *1. While plaintiff was in the bathroom, multiple Chester Police Department officers entered the apartment and, when the plaintiff exited the bathroom, one of the Officers hit him in the head with a SWAT shield, which caused plaintiff to fall backwards into the bathtub. *Id*. Thereafter, the plaintiff alleged that other officers pulled him from the tub to the floor, shot him with a taser and kicked him in the head and back. As a result of the encounter, the plaintiff asserted claims against the police officers, along with *Monell* claims against the City of Chester under §1983 for failure to train, supervise and discipline.

The United States District Court in *Armstrong* summarized the applicable law for the imposition of municipal liability as follows:

> To establish *Monell* liability, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694… To survive a motion to dismiss under Rule 12(b)(6), a plaintiff alleging municipal liability under §1983 must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009)

> A municipality's failure to train, supervise, or discipline its police force may be "properly thought of as a city 'policy or custom' that is actionable under §1983" only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989);*…*

In the Third Circuit, a plaintiff sufficiently pleads deliberate indifference for failure to train, supervise, or discipline "by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, n.7 (3d Cir. 2019) (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)). In cases such as this, where the plaintiff alleges a municipality's failure to act, a "pattern of similar constitutional violations...is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

*Armstrong*, 2020 WL 1233567, at *3

The District Court carefully examined the conclusory allegations in support of the *Monell* claim and held that they were insufficient to state a claim for municipal liability, explaining:

Plaintiff sets forth three allegations in support of his *Monell* claim. First, he alleges that the City and Police Department, "as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction [the] Unknown Officers who have violated the rights of citizens by choking citizens, including the plaintiff[ ], thus encouraging defendant Unknown [O]fficers in this case to engage in assaulting citizens of the City of Chester." Compl. ¶33. Second, plaintiff asserts that the City and Police Department "as a further matter of policy and practice failed to train properly [the] Unknown Officers, with respect to the constitutional, statutory and departmental limits of their authority including refraining from assaulting citizens of the City of Chester by choking." *Id.* ¶34. Finally, plaintiff alleges that the City and Police Department "were on actual notice of a need to train, supervise, discipline or terminate defendant [U]nknown [O]fficers" because "other similar incidents of choking citizens have occurred in the past involving defendant Unknown [O]fficers." *Id.* ¶35

The Court dismisses plaintiff's *Monell* count because he has failed to sufficiently allege deliberate indifference by the City. Significantly, the Complaint does not identify a specific form of training, supervision, or discipline whose absence had "a causal nexus" with plaintiff's injuries and "can be reasonably said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). To the contrary, plaintiff's assertions regarding the City's failure to train, supervise, and discipline are merely formulaic recitations of the elements of a *Monell* claim, unsupported by any factual allegations in the Complaint. Such assertions do not meet the Rule 12(b)(6) pleading standard…

In the absence of a pattern of misconduct, the burden to show deliberate indifference for failure to train is "high" because the plaintiff must show that "a violation of federal rights [was] a highly predictable consequence of a failure to

equip law enforcement officers with specific tools to handle recurring situations."
*Kelly v. Borough of Carlisle*, 622 F.3d 248, 265 (3d Cir. 2010) … Plaintiff has
failed to make such a showing in this case.

*Armstrong*, 2020 WL 1233567, at *3–4

Similarly, the United States District Court for the Western District of Pennsylvania granted a City and County's motion to dismiss *Monell* claims arising from alleged police misconduct where the claims for their alleged failure to "train, supervise, or discipline" were unsupported by any factual allegations. *Arrington v. City of Erie*, No. 22-cv-226, 2023 WL 5721690 (W.D. Pa. Sept. 5, 2023). In that case, the Plaintiff brought a civil rights action against the City of Erie ("Erie"), two Erie police officers, Erie County and certain Erie County personnel. The plaintiff's claims arose from his arrest on July 2, 2020, and subsequent detention at the Erie County Prison from July 4, 2020, to August 13, 2021. *Id*., 2023 WL 5721690, at *1. The plaintiff's arrest stemmed from an incident that occurred on May 30, 2020, during a public protest that was held in connection with a Black Lives Matter event in downtown Erie. *Id*. During the protest, "three double parking meters in the downtown area were damaged by a black male who was subsequently misidentified as the Plaintiff." *Id.* The plaintiff claimed that a City detective and a City police officer violated his constitutional rights by "fabricating and/or manufacturing evidence to obtain an arrest warrant against Plaintiff" which "led to Plaintiff's arrest and Plaintiff being accused of a crime." *Id*. The plaintiff was ultimately acquitted of all criminal charges. *Id*.

The plaintiff asserted four separate municipal liability claims under 42 U.S.C. §1983 against the City of Erie and Erie County. *Arrington*, 2023 WL 5721690, at *7. The first three counts asserted that the municipal defendants "had, in effect, actual and/or defacto policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct of individual Defendants in this case..." *Id*. The plaintiff also alleged in a separate count that Erie

County "created, required or facilitated a policy or custom that caused the constitutional violations" of the prison officials. *Id*. Finally, each count contained a claim that the City and County "failed to train, supervise, or discipline its officers." *Id.*

The District Court stated that a plaintiff who seeks to impose liability on a local government under §1983 must prove that "action pursuant to official municipal policy" caused their injury. *Arrington,* 2023 WL 5721690 at *7. Erie and Erie County argued "that Plaintiff's municipal liability claims based upon a policy, practice, or custom must be dismissed because Plaintiff has failed to identify a specific policy or custom that allegedly caused the alleged constitutional deprivation." *Id.* The District Court agreed, stating:

> Rather than identifying an existing policy, practice, or custom of the municipal Defendants, Plaintiff simply recites boilerplate language alleging that a policy existed, without specification. This is insufficient to state a cognizable municipal liability claim under *Monell*.

*Armstrong*, 2023 WL 5721690, at *7

The District Court also held that the "failure to train" allegations were insufficient to state a claim and explained the high standard for this type of claim:

> As for Plaintiff's "failure to train" claims against the municipal defendants, the Supreme Court has recognized that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Id.*… A municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the right of persons with whom the [untrained employees] come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983." *Id.* at 389. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 410 (1997)… "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

> Here again, the Plaintiff's failure to train claims fail because he simply parrots the legal standards for municipal liability under §1983 without pleading sufficient supporting facts. In particular, Plaintiff alleges no facts that would support an inference that either municipal Defendant was on notice of a risk of its officers committing constitutional violations and deliberately ignored that risk.... Indeed, Plaintiff does not allege any facts about training or supervision at all…

*Arrington*, 2023 WL 5721690, at *8. The District Court, therefore, dismissed the *Monell* claims.

The United States District Court for the Eastern District of Pennsylvania has repeatedly dismissed municipal liability claims which are based upon conclusory and formulaic *Monell* allegations stemming from alleged police misconduct. *See Richardson v. Barbour*, No. 2:18-CV-01758, 2020 WL 4815829 (E.D. Pa. Aug. 19, 2020). In that case, the plaintiffs alleged that police officers forcibly entered their home without a warrant and physically accosted and detained the plaintiffs at gunpoint while searching for an individual who did not reside there. *Id.*, 2020 WL 4815829, at *1. As a result of these alleged events, the plaintiffs sued five municipal defendants, along with their police officers.

The five municipal defendants each filed motions to dismiss the *Monell* claims in the plaintiffs' second amended complaint. *Id*. Although the plaintiffs did not oppose this portion of defendants' motions to dismiss, the District Court noted that court should not grant a Rule 12(b)(6) motion without analyzing the merits. *Id.*, 2020 WL 4815829, at *3. Analyzing the allegations in the second amended complaint [SAC], the District Court held that "Plaintiffs' SAC fails to allege a sufficient claim for failure to train or supervise/discipline." *Id*. The District Court observed that the allegations supporting the plaintiffs' claims for failure to train, supervise or discipline claim were contained in following paragraphs of the Second Amended Complaint:

> 35. [Municipal defendants and their] police departments, as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction their officers who have violated the rights of citizens by illegally assaulting citizens by pointing weapons at them in fear of death and throwing them without cause, including the

plaintiff's, thus encouraging the defendant officers in this case to engage in assaulting citizens.

36. [Municipal defendants and their] police departments, as a matter of policy and practice failed to train properly its officers, with respect to the constitutional, statutory and departmental limits of their authority including refraining from assaulting citizens.

37. [Municipal defendants and their] Police Departments were on actual notice of a need to train, supervise, discipline or terminate the defendant officers, prior to the incident in question, as other similar incidents of assaulting incidents by pointing weapons at them in fear of death and throwing them without cause have occurred in the past involving defendant officers.

*Id.*, 2020 WL 4815829, at *4

The District Court explained that these conclusory allegations, without any facts to support them, were not sufficient to state a claim for municipal liability:

In sum, the SAC does not sufficiently allege facts regarding a particular policy or custom, a particular policy or decision maker, a deliberate decision by the policy maker, or notice to the Municipal Defendants through a pattern of similar constitutional violations.

*Id.*, 2020 WL 4815829, at *6. The District Court, therefore, dismissed the *Monell* claims.

Turning to the present case, Plaintiff's Complaint contains the same pleading defects as the complaints in *Arrington, supra; Armstrong, supra;* and *Richardson, supra*. In the Complaint, Plaintiff avers that "New Castle failed to adequately supervise and train Defendants Mangino and Covert in the proper use of force, which resulted in the excessive force displayed against Plaintiff." (ECF 1, Compl., ¶94) Thus, Plaintiff claims that "New Castle is liable for the violations of Plaintiff's Fourth Amendment rights because it executed a policy and/or custom and/or practice and/or failed to adequately train and supervise Defendants Mangino and Covert that inflicted the injuries herein." (ECF 1, Compl., ¶91) Plaintiff, however, has failed to identify any specific policy and/or custom, and he has failed to allege the identity of any policy maker who implemented any

alleged policy or custom. Nor does the Complaint explain how any alleged deficiency in training or supervision actually caused the alleged constitutional violations.

Moreover, Plaintiff fails to identify any facts to show that New Castle "failed to adequately supervise or train" Officers Mangino and Covert. Rather, Plaintiff alleges in a conclusory manner that "New Castle failed to obtain and act appropriately upon information regarding previous complaints, abuse, or aggressive behavior or nature of their employees." (ECF 1, Compl., ¶96) Plaintiff also alleges, "New Castle knew, had reason to know, or should have known that its Defendants Mangino and Covert had a record of dangerous and reckless behavior." (ECF 1, Compl., ¶100) Plaintiff's Complaint is utterly devoid of any facts surrounding the alleged "previous complaints," the alleged prior "abuse" and the alleged "record of dangerous and reckless behavior." Plaintiff's Complaint merely contains the precise type of boilerplate and formulaic recitation of the elements of a *Monell* claim which District Courts have repeatedly held are insufficient to state a Section 1983 claim against a local governmental entity, such as New Castle. Therefore, Count IV against New Castle should be dismissed.

> **C.  The Court should dismiss the Intentional Infliction of Emotional Distress claim in Count VII against Officer Covert because the emotional distress claim cannot be based upon alleged omissions.**

In support of his cause of action for Intentional Infliction of Emotional Distress in Count VII, Plaintiff avers that the attack upon him was intentional. (ECF 1, Compl., ¶141) Plaintiff also alleges that "[a]s a proximate result of the Defendants' action, and/or inactions, the Plaintiff suffered substantial damages, including but not limited to severe emotional distress, mental anguish, embarrassment, personal humiliation, physical injuries, and sleep deprivation." (ECF 1, Compl., ¶142) The Complaint, however, is devoid of any allegations that Officer Covert participated in the attack. Instead, Plaintiff claims that Officer Covert failed to intervene to stop

the alleged attacks. (ECF 1, Compl., ¶76) Plaintiff also claims that, while the Corrections Officers were interacting with him, "Mangino and Covert were laughing and giggling uncontrollably." (ECF 1, Compl., ¶42) Neither of these allegations nor any of the other allegations are sufficient to state a claim against Officer Covert for the Intentional Infliction of Emotional Distress.

To prevail on an intentional infliction of emotional distress ("IIED") claim, a plaintiff must show: (1) the conduct of defendant was intentional or reckless; (2) the conduct of defendant was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the distress was severe. *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 556 (W.D. Pa. 2019); *see also Taylor v. Albert Einstein Medical Center*, 562 Pa. 176, 754 A.2d 650, 652 (2000). "The tort is to be narrowly construed." *Doe v. Plum Borough School Dist.*, No. 2:17-cv-32, 2017 WL 3492542, at *10 (W.D. Pa. Aug. 15, 2017), *dismissed*, No. 17-2899, 2018 WL 1224409 (3d Cir. Jan. 17, 2018)

"In line with their approach to IIED generally, Pennsylvania courts have adopted a narrow view of outrageous conduct and have repeatedly emphasized its rarity." *Moss v. Pennsylvania State University*, No. 4:22-CV-00529, 2023 WL 5184976, at *10 (M.D. Pa. Aug. 11, 2023), *reconsideration mot. denied*, 2023 WL 6988356 (M.D. Pa. Oct. 23, 2023) (dismissing student-athlete's IIED claim where coach belittled plaintiff and made stereotypical comments about her physique and appearance). In affirming the dismissal of an IIED claim, the Supreme Court of Pennsylvania approvingly quoted the <u>Restatement (Second) of Torts</u> (1965), which recognizes the narrow view of the tort:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities… [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

*Kazatsky v. King David Memorial Park, Inc*., 515 Pa. 183, 527 A.2d 988, 991–92 (1987), *quoting*, <u>Restatement (Second) of Torts</u> §46, ct. d (1965)

The United States District Court for the Western District of Pennsylvania has noted that "'Outrageous or extreme conduct' has been defined by the appellate courts [of Pennsylvania] as conduct that is 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency…'" *Sabo*, 386 F. Supp. 3d at 557 (Citation omitted). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have…presented only the most egregious conduct." *Id*. Importantly, "[t]here is no cognizable claim [for intentional infliction of emotional distress] where the failure to act, *i.e.*, negligence of a party, forms the basis of the claim." *Id.*, *quoting Jackson v. Sun Oil Co. of Pa.*, 361 Pa. Super. 54, 521 A.2d 469, 472 (1987) (citing Restatement (Second) of Torts §46). Furthermore, "[t]he standard for IIED is generally not satisfied by allegations of "insults, indignities, threats," or other similar conduct." *L.H. v. Pittston Area School District*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015), *aff'd*, 666 Fed. App'x. 213 (3d Cir. 2016)

Plaintiff claims that Officer Covert failed to intervene to stop the alleged attacks and that "Mangino and Covert were laughing and giggling uncontrollably" while Plaintiff was allegedly being assaulted by the Corrections Officers. (ECF 1, Compl., ¶¶42, 76) However, neither of these allegations, nor any of the other allegations in the Complaint, are sufficient to state a claim against Officer Covert for the for Intentional Infliction of Emotional Distress.

With respect to the allegations of the failure to intervene, it is well established that IIED claims cannot be based upon omissions or the failure to act under Pennsylvania law. *See Doe v. Liberatore*, No. 3:04-cv-2427, 2007 WL 1450705, at *3 (M.D. Pa. May 15, 2007) (holding that the defendants' failure to act "cannot, as a matter of law, subject them to liability for intentional infliction of emotional distress"); *Page v. School District of Philadelphia*, 45 F. Supp. 2d 457, 469 (E.D. Pa.1999) (holding that teachers' failure to prevent assault of student perpetrated by other

students did not subject them to liability for intentional infliction of emotional distress); *Jackson*, 521 A.2d at, 471 (stating there is no liability for intentional infliction of emotional distress where the claim is based on the failure to act). Thus, Officer Covert cannot be held liable for IIED under the theory that he failed to intervene to stop the alleged assaults committed by others.

Nor do the allegations of "laughing and giggling" support an IIED claim. *See Snider v. Pennsylvania Department of Corrections*, 505 F. Supp. 3d 360, 445, n. 436 (M.D. Pa. 2020) (finding allegations that corrections officers denied plaintiff a shower because of his hearing impairment, refused to call the psychological services specialist when plaintiff asked to speak with him, laughed and yelled at plaintiff in front of the "entire block" and refused to notify medical staff when plaintiff began banging his head against the wall did not rise to "outrageous or extreme conduct" as defined by Pennsylvania law). The type of alleged conduct by Officer Covert involving "laughing and giggling" simply is not the type of extreme and outrageous conduct which is required for an IIED claim. *Cf. Tisone v. Berardino*, No. 16-cv-167, 2016 WL 7404556, at *10 (W.D. Pa. Dec. 22, 2016) (holding that alleged "verbal abuse…falls short of the standard required to make out a viable IIED claim."); *Vasquez v. Dorta*, No. 1468 C.D. 2021, 2023 WL 2879411, at *8, 297 A.3d 448 (Pa. Commw. 2023) (holding that corrections officer's "alleged insults and taunts" directed to an inmate did "not rise to the level of extreme and outrageous conduct necessary to support [the plaintiff's] intentional infliction of emotional distress claim). Therefore, the IIED claims against Officer Covert in Count VII should be dismissed.

**D.   The IIED claims against Officer Mangino should be dismissed because they are duplicative of the excessive force and battery claims and because IIED claims cannot be based upon alleged omissions.**

Plaintiff avers in Count VII for IIED that the alleged attack upon him was intentional. (ECF 1, Compl., ¶141) Plaintiff also alleges that "[a]s a proximate result of the Defendants' action, and/or

inactions, the Plaintiff suffered substantial damages, including but not limited to severe emotional distress, mental anguish, embarrassment, personal humiliation, physical injuries, and sleep deprivation." (ECF 1, Compl., ¶142) Plaintiff also claims that "Mangino and Covert were laughing and giggling uncontrollably" while the Corrections Officers were interacting with Plaintiff. (ECF 1, Compl., ¶42) For the same reasons as discussed above in Section C above, Plaintiff cannot maintain an IIED claim against Officer Mangino based upon alleged omissions *or* alleged "laughing and giggling." Nor can Plaintiff base an alleged IIED claim upon allegations that he was assaulted by Officer Mangino because these allegations are duplicative of the excessive force claims in Count I and the battery claims in Count VI. The Court, therefore, should dismiss Count VII – Intentional Infliction of Emotional Distress against Officer Mangino.

Duplicative tort claims are properly dismissed under Pennsylvania law. *Mazzarella v. Brady*, No. 14-cv-5654, 2016 WL 75041, at *4 (E.D. Pa. Jan. 7, 2016) (dismissing common law excessive force claim against police officer because it was duplicative of common law battery claim); *Romy v. Burke*, No. 1236 May Term 2002, 2003 WL 21205975, at *5 (C.P. Phila. May 2, 2003) (dismissing separate count for vicarious liability where plaintiff had already alleged the defendants were vicariously liable parties with respect to the conversion and conspiracy claims).

With respect to Plaintiff's excessive force claim, Plaintiff avers that, as a "direct and proximate result" of "Mangino…[utilizing] excessive force in…punching…the Plaintiff," he "has suffered and will continue to suffer irreparable injury, including but not limited to humiliation and significant psychological and emotional trauma…" (ECF 1, Compl., ¶¶65, 68) Plaintiff is also asserting in state-law battery claims in Count VI as a result of the alleged attacks. (ECF 1, Compl., ¶¶137-38) Under Pennsylvania law, an individual commits a battery when he or she intentionally causes a harmful or offensive contact with another person's body. *Ickes v. Grassmeyer*, 30 F. Supp.

3d 375, 396 (W.D. Pa. 2014). A plaintiff may recover compensatory damages on a claim for civil battery based on physical injuries, as well as emotional injuries such as feelings of shock, fright or humiliation. *Schall v. Vazquez*, 322 F. Supp. 2d 594, 602 (E.D. Pa. 2004); *Allain v. Miller*, No. 22-cv-3131, 2023 WL 6520490, at *5 (E.D. Pa. Oct. 5, 2023) ("Compensatory damages for emotional harm, pain, and suffering are available in claims for assault and battery.")

The damages sought and available for the Section 1983 Excessive Force claims and the state law battery claims are the same as the damages that are available for the IIED claims and are based upon the same conduct. Simply put, Plaintiff's IIED claim arising out of the use of the alleged excessive force and the alleged attacks upon him is duplicative of and entirely subsumed by his Section 1983 Excessive Force and/or his state law assault and battery claims and, therefore, the IIED Count should be dismissed. *See Taylor v. City of Rochester*, 458 F. Supp. 3d 133, 145–46 (W.D. N.Y. 2020) ("[P]laintiff's claim of intentional infliction of emotional distress arising out of the use of excessive force is entirely subsumed by his excessive force and/or assault and battery claims, and as such, it must be dismissed"); *Woosley v. City* of Paris, 591 F. Supp. 2d 913 (E.D. Ky. 2008), *as amended*, (Dec. 4, 2008) (holding that an arrestee's claim against arresting police officer for negligent or intentional infliction of emotional distress was duplicative of his assault and battery and false imprisonment claims and warranted its dismissal under Kentucky law)

In *Taylor, supra*, an arrestee who had fled from the police alleged that we subjected to excessive force during the course of his arrest. *Id*., 458 F. Supp. 3d at 138. As a result, the arrestee asserted various claims against the City of Rochester, its police department and its police officers, including a Section 1983 excessive force claim, along with New York state law battery and IIED claims. In granting the defendants' summary judgment motion as to the state law IIED claim, the United States District Court for the Western District of New York held that "[w]ith respect to

plaintiff's claim that he was subjected to intentional infliction of emotional distress through the imposition of excessive force, that claim must be dismissed as duplicative, as 'federal district courts in this Circuit 'have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.'" *Id.*, at 145.

The same conclusion as in *Taylor, supra*, should follow here. Plaintiff's state law IIED claim is duplicative of his Section 1983 Excessive Force claim and state law battery claims, since it is based upon the same conduct, *i.e.*, the alleged attacks, and seeks the same damages. Thus, the state law IIED claims against Officer Mangino should be dismissed.

### IV.  Conclusion

For the foregoing reasons, this Court should grant Defendants, New Castle, Officer Mangino and Officer Covert's Motion to Dismiss pursuant to Rule 12(b)(6).

DELL, MOSER, LANE & LOUGHNEY, LLC

/s/   *Thomas E. Zumpella*
Thomas E. Zumpella, Esquire
PA ID No. 93277
Dell, Moser, Lane & Loughney, LLC
Two Chatham Center, Suite 1500
112 Washington Place
Pittsburgh, PA 15219
Phone:  412-471-1180
Email:  tez@dellmoser.com
Counsel for Defendants, The City of New
Castle; Officer Anthony Mangino, Jr.; and
Officer Joshua Covert

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2023, I filed the foregoing Brief in Support of Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with the Court using the Court's CM/ECF System, which will send notification of such filing to all counsel of Record. I further certify that, on December 18, 2023, I served the foregoing Brief in Support of Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by First Class U.S. Mail, postage pre-paid upon the following unrepresented parties:

Correction Officer Mark Brader
Lawrence County Correction Center
111 Milton Street
New Castle, PA 16101

Correction Officer Timothy Pitzer
Lawrence County Correction Center
111 Milton Street
New Castle, PA 16101

*s/ Thomas E. Zumpella*
Thomas E. Zumpella, Esquire